CAUSE NO.: 471-03320-2019

| | | |
|---|---|---|
| AMICA MUTUAL INSURANCE COMPANY | § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | | |
| v. | | COLLIN COUNTY, TEXAS |
| GAS LAMP INSURANCE SERVICES, INC. AND PREFERRED CONTRACTORS INSURANCE COMPANY, RRG | | 471st JUDICIAL DISTRICT |
| *Defendants* | | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff AMICA MUTUAL INSURANCE COMPANY ("AMICA") and files this, its First Amended Original Petition complaining of Defendants GASLAMP INSURANCE SERVICES, INC., (hereinafter referred to as "Gaslamp" or "Defendant") and PREFERRED CONTRACTORS INSURANCE COMPANY, RISK RETENTION GROUP, (hereinafter referred to as "PCIC" or "Defendant") and respectfully shows the Court the following:

### I. DISCOVERY

1.1     Plaintiff AMICA pleads that this is a Level Two case pursuant to Rule 190.3(a) under the Texas Rules of Civil Procedure.

### II. PARTIES, VENUE AND JURISDICTION

2.1     Plaintiff AMICA is an insurance company whose principal place of business in Texas is in Sugarland, Fort Bend County, Texas.  Plaintiff AMICA has been assigned any and all claims possessed by Professor Plumb, LLC, and now brings these assigned claims against Gaslamp and PCIC.  Professor Plumb, LLC (hereinafter referred to as

Professor Plumb) is the insured of Policy No. PCA5043-PCCM211630 (the "Policy") and any and all claims Professor Plumb has against PCIC and Gaslamp have been assigned to Plaintiff AMICA. A copy of the Policy is attached as Ex. A.

2.2   Defendant Gaslamp has filed an answer herein subject to a Special Appearance.

2.3   Defendant PCIC has filed an answer herein.

2.4   Pursuant to Section 1952.110 of the Texas Insurance Code, venue lies in Collin, Texas, because this is a suit against an insurance company regarding coverage and all acts or a substantial part of the events that give rise to the claims against Gaslamp and PCIC took place in Collin County.

2.5   This Court has jurisdiction over all parties hereto as Defendants Gaslamp and PCIC committed a breach of the Policy and committed other torts within the jurisdictional boundaries of the State of Texas.

### III. FACTS

3.1   This suit arises from plumbing services performed at a residential property located at 2307 Forest Grove Estates Road, Allen Texas 75002. (hereinafter "the Property"). At all times material, Plaintiff AMICA provided homeowners insurance coverage to it's insured, Andrew Klassen, for the Property and its contents. Professor Plumb was retained by Andrew Klassen to perform plumbing services at the Property. The Property is a home resided in by Andrew Klassen and his family.

3.2   Professor Plumb was hired by Andrew Klassen to replace two water faucets or hose bibs on the outside of the Property. As a result of the plumbing services, Professor Plumb started a fire and the fire caused extensive damage to the Property and

its contents.

3.3     As a result of the fire, Mr. Klassen filed a claim with his homeowner's insurance carrier, Plaintiff AMICA, for coverage of the damages caused by Professor Plumb. At the end of the claim process, $462,400.70 was duly paid by Plaintiff AMICA to its insured, Andrew Klassen.

3.4     Plaintiff AMICA is subrogated to certain rights and interests of its insured for monies paid thereunder and pursued an action against Professor Plumb. Subsequently, Professor Plumb filed a claim with its Commercial Liability Insurance carrier, PCIC and its broker/agent Gaslamp.  PCIC denied coverage for the claim and Gaslamp denied making any misrepresentations related to the sale of the commercial liability policy to Professor Plumb.  Subsequently, Professor Plumb assigned its claims against Gaslamp and PCIC to Plaintiff AMICA.  Plaintiff AMICA now brings this suit to recover damages it incurred when it paid to repair Andrew Klassen's home.  Plaintiff AMICA, brings this action for the bad faith, negligent and fraudulent misrepresentations, breach of contract, violations of the Texas Insurance Code and the DTPA.

3.5     The Policy was sold to Professor Plumb by Defendant Gaslamp as the broker.  Defendant Gaslamp acted in bad faith and made various negligent and fraudulent misrepresentations when selling the Policy to Professor Plumb.

3.6     The bad faith and misrepresentations made by the Gaslamp are clear from the deposition testimony by Brian Roach of Professor Plumb and the emails provided by Professor Plumb in the underlying litigation instituted by Plaintiff AMICA against Professor Plumb when pursuing its subrogation rights against Professor Plumb.  The emails between Gaslamp and Professor Plumb were produced in the litigation as Plumb

144-150, attached as Ex. B.  Again, these misrepresentations are found in the emails and where discussed in the deposition of Brian Roach, one of the owners of Professor Plumb, when discussing the communications between Amber Watson, the office manager for Professor Plumb, and Joaquin Picazo, the agent/broker with Gaslamp.

3.7  In Plumb 145, an inquiry is made by Mr. Picazo asking whether Ms. Watson has an interest in the Commercial General Liability Policy quote that Mr. Picazo had previously provided to Ms. Watson.  *See* Ex. B.  Mr. Picazo states that the only necessary step needed to go forward is a phone application (with no credit check). The phone application will take approximately 5 minutes.  Once the phone application is complete, Mr. Picazo says he will send a contract to sign via email.  Once the contract is signed, and in his possession, he can have a Binder (proof of insurance) in Ms. Watson's possession approximately 2-3 hours later.

3.8  In Plumb 146, Mr. Picazo informed Ms. Watson that in his email dated December 19, 2016 at 3:18 p.m. that "All General Liability Policies provide coverage in case you are found negligent and your negligence caused bodily injury or property damage to a 3rd party.  This policy provides coverage for a contractor on a job site." The limits are as I mentioned on my original email "1 million dollars." *See* Ex. B.

3.9  In Plumb 147, Ms. Watson asks for the details on "what this quote covers?" Ms. Watson goes on to explain in her email that she has received several insurance quotes for $300,000 and $500,000 in coverage, and all are much more expensive than the quote from Gas Lamp. *See* Ex. B.  Mr. Picazo states that there are a couple policies for Ms. Watson to consider regarding a 1 million General Liability Policy for plumbing.  In Plumb 149, Mr. Picazo states that the two policies are a "Claims Made" or "An

Occurrence Policy." Mr. Picazo goes on to explain the difference between a "claims made" and the "occurrence" Policy but never states anything regarding the "heating device" exclusion that is now being used by PCIC to deny coverage for the fire. *See* Ex. B.

3.10    The failure by Gaslamp to explain or even mention the "heating device" exclusion and the reason for being much cheaper policy than the others that are being offered to Ms. Watson is a fraudulent and at the very least a negligent misrepresentation. This misrepresentation and other acts of bad faith by Gaslamp is intentional. It should have been explained by Gaslamp so that Ms. Watson would of have understood why Gaslamp was offering such a cheap policy.

3.11    As explained in Mr. Roach's deposition, the use by a plumber of a heating device or open flame is an everyday occurrence and Mr. Roach cannot perform his work as a plumber without the use of a heating device. At page 23 of Mr. Roach's deposition, he states that the insurance company (PCIC) took the position that the policy does not cover the use of any torches and states that "I can't remember the exact wording but basically can't use any open flames." Mr. Roach explains that he uses an open flame, a torch or a heating device or something of that nature every day. He uses the torch for soldering copper water pipes together and there is no way for him to solder copper pipes together if he does not use a flame.

3.12    In other words, a plumber cannot do his job if he is not allowed to use a heating device or flame. The policy sold to Professor Plumb by PCIC and Gaslamp contained an exclusion that would not provide coverage for the type of work that Mr. Roach performs every day. This misrepresentation and action in bad faith by Gaslamp in

giving false and misleading information when it did not explain that it would not provide the type of coverage necessary for a plumber to perform routine and every day required tasks led to the denial of coverage by PCIC.

3.13   PCIC retained a law firm to review the coverage provided by policy and found that there is no coverage for Professor Plumbs loss and it further denied that it has made no misrepresentations to its insured of any kind.

3.14   To further show Gaslamp's involvement in this matter and why their Special Appearance is meritless attached is the Certificate of Insurance executed by an agent for Gaslamp and Professor Plumb's Initial Disclosures in the litigation between Plaintiff AMICA and Professor Plumb which contains an exhibit that lists the adjusters for Gaslamp, Justin Duenes and Joaquin Picazo, as persons with knowledge. *See* Ex. C.

3.15   Under contract law, a plaintiff can recover compensatory damages against a defendant when a court finds that the defendant has committed fraudulent misrepresentations. Courts will typically find that a defendant has committed fraudulent misrepresentations when six factors have been met:

1. a representation was made,
2. a representation was false,
3. that when made, the defendant knew that the representation was false or that the defendant made the statement recklessly without knowledge of its truth,
4. that the fraudulent misrepresentation was made with the intention that the plaintiff rely on it,
5. that the plaintiff did rely on the fraudulent misrepresentation,
6. that the plaintiff suffered harm as a result of the fraudulent misrepresentation.

3.16   The most common measure of compensatory damages for the tort of fraudulent misrepresentation is benefit of the bargain damages – the same as expectation interest compensatory damages for breach of contract. In the fraudulent misrepresentation

context, the benefit of the bargain damages measure of damages allows the plaintiff to recover the difference in value of the property as represented by the defendant and the value of the property the plaintiff ultimately received. Under this measure, the plaintiff will have no loss and will achieve any economic gains he would have had if the representations had been correct.

3.17    In other words, had the misrepresentation not been made by Gaslamp or PCIC, a policy would have been purchased by Professor Plumb that would have provided appropriate coverage for the type of work a plumber performs every day in the regular course of his or her work as a plumber, would have provided 1 million in coverage and would have paid the entire claim that was being made by Plaintiff AMICA.

## IV. CAUSES OF ACTION

4.1    If an agency relationship is established, the agent can act with either actual or apparent authority.  Mr. Picazo was PCIC's agent because he solicited Professor Plumb's Commercial General Liability (CGL) insurance application, and according to Texas Insurance Code § 4001.052, a solicitor of insurance is the agent of the insurer, not the insured. TEX. INS. CODE ANN. art. 4001.052 (West 2005).  Mr. Picazo had both apparent and actual authority to act as PCIC's agent.  Mr. Picazo was acting with the actual authority of Gaslamp when it made the misrepresentations regarding the Policy and solicited Professor Plumb to buy the CGL policy through Gaslamp on behalf of PCIC.

### Breach of Contract

4.2    In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff;

(3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. In this case, Gas Lamp and PCIC promised to provide a CGL policy that provided coverage in case Professor Plumb is found negligent and Professor Plumb's negligence caused bodily injury or property damage to a third party. The Policy should provide coverage for a plumber on the job site. The assignee, Plaintiff Amica, of Professor Plumb's breach of contract claim it can sue PCIC and Gas Lamp for breach of contract. *See Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l,* 137 S.W.3rd 299, 308 (Tex. App.-Beaumont 2004, no pet.).

## Negligent or Fraudulent Misrepresentations

4.3     Plaintiff AMICA claims that Gaslamp and PCIC committed negligent and fraudulent misrepresentations when selling and providing the Policy to Professor Plumb. Recovery of compensatory damages is applicable when a court finds that the defendant has committed fraudulent misrepresentations. Courts typically find that a defendant has committed fraudulent misrepresentations when six factors are met: (1) a representation was made, (2) the representation was false, (3) when made, the defendant knew the representation was false or made the statement recklessly without knowledge of its truth, (4) the fraudulent misrepresentation was made with the intention that the plaintiff rely on it, (5) the plaintiff did rely on the fraudulent misrepresentation, and (6) the plaintiff suffered harm as a result of the fraudulent misrepresentation.

4.4     The most common measure of compensatory damages for the tort of fraudulent misrepresentation is benefit of the bargain damages – the same as expectation interest compensatory damages for breach of contract. In the fraudulent misrepresentation context, the benefit of the bargain damages measure of damages allows the plaintiff to

recover the difference in value of the property as represented by the defendant and the value of the property the plaintiff ultimately received. Under this measure, the plaintiff will have no loss and will achieve any economic gains he would have had if the representations had been correct.

4.5   Had the misrepresentations not been made by Gas Lamp and PCIC, a policy would have been purchased by Professor Plumb that would not have contained the exclusion and the policy would have provided 1 million in coverage and would have paid the entire claim that was made by Plaintiff AMICA in the underlying lawsuit against Professor Plumb.

## Violation of the Texas Insurance Code and the DTPA

4.6   It is a violation of the Texas Insurance Code for a person involved in the business of insurance to make misrepresentations about an insurance policy. TEX. INS. CODE ANN. art. 541.051 (West 2005). Such misrepresentations include, among others, those regarding the terms of a policy, and "benefits or advantages promised by the policy." *Id.* Additionally, a violation of the Texas Insurance Code is also a violation of the DTPA.  The DTPA must be liberally construed and applied to promote its purpose of protecting consumers from false, misleading or deceptive business practices, and unconscionable actions. A DTPA action can be brought with many common law causes of action including breach of contract, fraud, misrepresentation and negligence. *PPG Indus. v. JMB/Houston Ctrs. Partners,* 146 S.W.33d 79,89 (Tex.2004).   Gas Lamp and PCIC made several fraudulent misrepresentations regarding the Policy, including a representation that this was the type of policy used by plumbers. Plaintiff AMICA contends that such representations are violations of the Texas Insurance Code—and

therefore the DTPA—because they constitute misrepresentations, misleading statements, and failures to disclose material facts. Gas Lamp and PCIC have violated the Texas Insurance Code and the DTPA.

## V. DAMAGES

5.1    Plaintiff AMICA's damages are the result of the payments it made to its insured, Mr. Klassen, for the required repairs to his home which required the payment of insurance benefits to Mr. Klassen. Plaintiff AMICA has been damaged and continues to be damaged by the breach of contract, negligent and fraudulent misrepresentations, violations of the Texas Insurance Code and the DTPA. Amica has paid, as a result of Gas Lamp and PCIC's actions to deny insurance coverage for the negligence of Professor Plumb, an amount equal to the benefits Plaintiff AMICA paid to Mr. Klassen. A Final Agreed Judgment was filed in Cause No.: 416-05605-2017, Amica Mutual Insurance Company v. Professor Plumb, LLC. in the amount of $452,400.70.  Plaintiff AMICA is entitled to recover the sum of damages paid to Mr. Klassen due to the reprehensible actions taken by PCIC and Gaslamp.

## VI. JURY DEMAND

6.1    Plaintiff AMICA has previously and continues to make a demand and application for a jury trial.

## VII. RESERVATION OF RIGHTS

7.1    Plaintiff AMICA respectfully reserves the right to bring additional causes of action against the Defendants and to amend this Petition as necessary.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff AMICA prays that upon final hearing hereof, Plaintiff AMICA has judgment as follows:

1. Actual damages within jurisdictional limits of this Court;

2. Pre-judgment and post-judgment interest as provided by law; and

3. Such other equitable and legal relief to which Plaintiff may be justly entitled.

Respectfully submitted,

DEAN G. PAPPAS LAW FIRM, PLLC

By:_____
   Dean G. Pappas
   State Bar No. 15454375
   dpappas@dgplawfirm.com
   Frank G. Vlahakos
   State Bar No. 00794799
   fvlahakos@dgplawfirm.com
   Teylor E. Mark
   State Bar No. 24099704
   tmark@dgplawfirm.com
   8588 Katy Freeway, Suite 100
   Houston, Texas 77024
   713-914-6200 - Phone
   713-914-6201 – Fax

-   and   -

By:   /s/      Michael P. Guagenty
   Michael P. Guagenty, *of Counsel*
   MA BBO #567176
   SLOANE AND WALSH, LLP
   One Center Plaza, 8th Floor
   Boston, MA 02108

(617) 523-6010
mguagenty@sloanwalsh.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

      I do hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record, by Electronic Service of the Collin County District Clerk Filing Manager, email, certified mail, return receipt requested, and/or facsimile transmission on October 8, 2019, as follows:

*Via eFile: jnicodemus@cobbmartinez.com; and mlast@cobbmartinez.com*
Jeffrey I. Nicodemus
Mathew E. Last
Cobb Martinez Woodward PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201

*Via eFile: tjc@egglestonbriscoe.com*
Tracey Jackson Cowart
Eggleston & Briscoe, LLP
333 Clay Street, Suite 4800
Houston, Texas 77002

_____
Frank G. Vlahakos